## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **WALTER L. WHITAKER,** <br> 1927 North Collington Avenue <br> Baltimore, Maryland 21213 <br><br> Plaintiff, <br><br> v. <br><br> **HOUSING AUTHORITY OF** <br> **BALTIMORE CITY** <br><br> <u>To Be Served On</u>: <br> Janet Abrahams, President & CEO. <br> Housing Authority of Baltimore City <br> 417 East Fayette Street <br> Baltimore, Maryland 21202 <br><br> Defendant. | * <br> * <br> * <br> * <br> * <br> * <br> * Civil Action No.: _____ <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### COMPLAINT AND JURY DEMAND

COMES NOW, Plaintiff, Walter L. Whitaker, ("Plaintiff"), by and through his attorney, George A. Rose, Esq., and hereby sues Housing Authority of Baltimore City (hereinafter "Defendant" or "HABC") and states as follows:

### I. INTRODUCTION

1. This is an action for disability discrimination, failure to accommodate, and retaliation in violation of the Americans with Disabilities Act of 1990, as amended ("ADA"), arising from Defendant HABC's refusal to provide a short, medically supported extension of leave and its termination of Plaintiff while he was on medical restrictions following surgery.

1

2. The documentary record reflects a 'reapply' directive and a full-duty return-to-work condition, reflecting a fully healed return-to-work requirement rather than an individualized ADA accommodation analysis.

## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under federal law, including the ADA, 42 U.S.C. § 12101 et seq.

4. This Court has supplemental jurisdiction over Plaintiff's claims under Maryland law, including Md. Code Ann., State Gov't § 20-606 et seq., pursuant to 28 U.S.C. § 1367(a), because those claims are so related to Plaintiff's federal ADA claims that they form part of the same case or controversy under Article III of the United States Constitution, and arise from the same nucleus of operative facts.

5. Venue is proper in this District under 28 U.S.C. § 1391 because Defendant resides in this District and the events giving rise to these claims occurred in this District.

## III. PARTIES

6. Plaintiff is an adult resident of Maryland, residing in Baltimore City.

7. Defendant is a public employer operating in Baltimore, Maryland and is an "employer" within the meaning of the ADA, employing 15 or more employees.

## IV. ADMINISTRATIVE EXHAUSTION / CONDITIONS PRECEDENT

8. Plaintiff timely filed a charge of discrimination alleging disability discrimination and retaliation. A Notice of Right to Sue was issued and received by Plaintiff on December 19, 2025, and this action is filed within 90 days of receipt.

9. Plaintiff also satisfies the prerequisites to bring claims under Maryland law, including Md. Code Ann., State Gov't § 20-1013. Plaintiff filed an administrative charge/complaint alleging

disability discrimination and retaliation, at least one hundred eighty (180) days have elapsed since the filing, and these claims are brought within the applicable limitations period, including within two (2) years of the alleged unlawful employment practice. All conditions precedent to filing this action have been satisfied and Plaintiff has exhausted his administrative remedies.

### V. FACTUAL ALLEGATIONS

10. Plaintiff worked for Defendant as a Maintenance Technician from August 1, 2019, through March 18, 2024.

11. Defendant's written Maintenance Technician job description states that the position includes performing a wide range of building repairs and maintenance functions in response to work orders and completing assigned work in a timely manner.

12. The job description further reflects physical demands, including frequent travel to Defendant's properties and frequently transporting up to seventy-five (75) pounds, with occasional transporting up to one hundred (100) pounds.

13. The job description also states that "[r]easonable accommodations may be made to enable individuals with disabilities to perform the essential functions."

14. Plaintiff had a disability within the meaning of the ADA. Plaintiff's impairment includes shoulder impairment requiring surgery. Plaintiff's impairment resulted in physician-imposed restrictions including lifting no more than five (5) pounds and being medically restricted from work following surgery through at least April 20, 2024.

15. Plaintiff's impairment substantially limits one or more major life activities, including lifting, reaching, and performing manual tasks.

16. Defendant had actual notice of Plaintiff's disability-related limitations and need for accommodation through Plaintiff's written accommodation request(s) and medical documentation.

17. After the expiration of prior light-duty documentation in December 2022, on or about March 13, 2023, Plaintiff submitted a written request for accommodation seeking, in substance, "no lifting over … 5 lbs.," a helper when doing certain work orders, and breaks during work hours because of breathing problems.

18. On or about March 30, 2023, Defendant received an electronically signed verification, reflecting that Plaintiff could resume work with restrictions, including lifting no more than five pounds, breaks as needed during the workday, and possible help for assignments.

19. On May 5, 2023, Defendant (through Human Resources) requested that Plaintiff provide additional information from his medical provider addressing the length/duration of the requested restrictions and, if pending an office visit or surgery, the relevant date.

20. On or about May 9, 2023, Defendant received an electronically signed verification continuing Plaintiff's restrictions and stating the restrictions were for the period May 9, 2023, through August 9, 2023, while Plaintiff pursued medical optimization prior to surgery.

21. Plaintiff was a qualified individual because he could perform the essential functions of the Maintenance Technician position with or without reasonable accommodation; at minimum, with reasonable accommodation, including the finite leave extension through April 20, 2024, Plaintiff could perform the essential functions. To the extent Defendant contends that Plaintiff could not perform certain essential functions during a short post-surgical recovery period, Plaintiff alleges that the requested accommodation was reasonable and time-limited and would have enabled Plaintiff to return to work and perform the essential functions shortly thereafter.

22. Upon information and belief, Defendant failed to engage in a timely, good-faith interactive process to identify and implement effective accommodations, including by exploring alternative accommodations short of termination.

23. In September 2023, Plaintiff provided information indicating his restrictions needed to remain in place through December 9, 2023.

24. On or about October 25, 2023, Defendant sent Plaintiff a letter stating that Plaintiff's restrictions were negatively impacting essential functions and that Defendant could no longer accommodate the restrictions.

25. In that October 25, 2023, letter, Defendant also represented that although it previously advised Plaintiff that Defendant was unable to accommodate the requested modifications, Defendant "indirectly did approve" the accommodations because Defendant had not made adjustments from that period until October 2023.

26. The October 25, 2023, letter further outlined "options" Plaintiff was required to select among, including returning to work without restrictions, applying for FMLA leave, or applying for a leave of absence ("LOA"), with paperwork due by November 3, 2023.

27. On or about December 20, 2023, Plaintiff began medical leave in connection with shoulder surgery.

28. On or about February 15, 2024, Plaintiff submitted to Human Resources his FMLA request, electronically signed by his medical provider, indicating leave from December 20, 2023, through April 20, 2024.

29. On or about February 15, 2024, Defendant approved FMLA for twelve weeks effective December 20, 2023, through March 12, 2024, and advised Plaintiff he was expected to return to work on March 13, 2024.

30. Defendant's February 15, 2024, letter further stated that if Plaintiff exhausted FMLA on March 13, 2024, he "may need to request an Official Leave of Absence," and that Defendant would reevaluate if circumstances changed.

31. On March 6, 2024, Plaintiff provided Defendant a written request to extend leave, stating he was medically restricted from work from December 20, 2023, to April 20, 2024 "or when" medically cleared to return by his doctor and requesting an extension for FMLA.

32. On or about March 7, 2024, Senior Manager Maintenance Ryan Byers responded that Defendant could not accommodate additional leave at that time and directed Plaintiff to focus on healing and reapply once medically cleared for full duty.

33. On March 14, 2024, Defendant sent Plaintiff a letter stating Plaintiff's twelve weeks of FMLA ended March 12, 2024, that Plaintiff's physician documentation indicated medical restriction through April 20, 2024, that Defendant was unable to approve leave of absence until April 20, 2024, and that if Plaintiff did not return to work on March 18, 2024, Defendant would proceed with termination effective March 18, 2024.

34. On March 18, 2024, Defendant fired Plaintiff by way of certified letter dated March 18, 2024.

35. Defendant admits it has an FMLA-related policy but no written policy requiring termination when FMLA leave expires.

36. Defendant further admits it has granted extended leave beyond FMLA to other employees with medical conditions.

37. Upon information and belief, during the relevant period, Defendant granted extended modified duty/leave to other maintenance technicians under the same decisionmakers, including Robin Gray, Alvis Thomas, Nadina Young, and Betty McCain, who were permitted to remain employed despite comparable medical limitations and operational circumstances, while denying Plaintiff a finite extension through April 20, 2024.

38. Defendant admits Plaintiff's position was not filled after his termination and states it considers the Maintenance Technician position an "evergreen" position that it has posted repeatedly.

39. Defendant further admits that it reduced maintenance staffing and that agency-wide maintenance staffing decreased from approximately 113 technicians in 2023 to 86 technicians by May 2025.

40. During relevant times, Defendant did not hire employees to cover shortfalls at Scattered Sites, did not transfer maintenance technicians to Scattered Sites, and outsourced vacant unit turnover work to a third-party contractor.

41. During a related period of conversion to private management, Defendant transferred maintenance workers at other sites to avoid their termination, although none were sent to Scattered Sites.

42. Upon information and belief, Defendant's refusal to provide Plaintiff a short, medically supported extension of leave and/or another reasonable accommodation was discretionary, inconsistent with Defendant's practices, and not compelled by any written policy.

43. Plaintiff engaged in protected activity under the ADA by requesting reasonable accommodation, including on March 13, 2023, and by requesting additional leave/leave-related accommodation on March 6, 2024.

44. Defendant took materially adverse actions against Plaintiff by denying his March 2024 request for additional leave and terminating Plaintiff's employment effective March 18, 2024.

45. The close temporal proximity between Plaintiff's March 2024 accommodation request and Defendant's denial/termination supports a plausible inference of retaliatory causation.

46. Plaintiff requested reasonable accommodation in the form of a short, medically supported period of additional leave through April 20, 2024.

47. Defendant treated Plaintiff's request as "indefinite" because Plaintiff's request referenced "April 20, 2024, or when" medically cleared, and Defendant denied the request rather than seeking clarification or updated information as part of a good-faith interactive process.

48. Plaintiff was ready and willing to provide clarifying information and updated documentation to confirm that the requested leave was finite and reasonably likely to enable him to return to work.

49. Upon information and belief, Defendant failed to explore reasonable alternatives, including an Official Leave of Absence, brief unpaid leave beyond FMLA consistent with Defendant's admitted practice, temporary reassignment to a vacant position, or other effective accommodations.

50. Defendant's termination of Plaintiff at FMLA exhaustion was discretionary, not mandated by any written policy, and Defendant has granted extended leave beyond FMLA to other employees with medical conditions.

51. Upon information and belief, Defendant treated Plaintiff less favorably than similarly situated non-disabled employees and/or employees who did not request ADA accommodations, including by denying Plaintiff leave beyond FMLA that Defendant granted to other employees with medical conditions.

52. Defendant's stated operational rationale is plausibly contestable, including because Defendant did not fill Plaintiff's position after termination and maintained the position as an "evergreen" posting while also describing staffing reductions and outsourcing.

## COUNT I
## ADA Disparate Treatment – Discriminatory Discharge (42 U.S.C. § 12112(a))

53. Plaintiff incorporates by reference Paragraphs 1 through 51 as if fully set forth herein.

54. Plaintiff had a disability within the meaning of the ADA during the relevant period, including at the time of Defendant's denial of accommodation and termination in March 2024.

55. Plaintiff was a "qualified individual" within the meaning of the ADA because he could perform the essential functions of the Maintenance Technician position with or without reasonable accommodation. Specifically, Plaintiff could perform the essential functions without accommodation except during a finite post-surgical recovery period, and at minimum could perform the essential functions with reasonable accommodation, including a finite leave through April 20, 2024, and any temporary restrictions requested.

56. Defendant terminated Plaintiff's employment effective March 18, 2024, which constitutes an adverse employment action.

57. Defendant terminated Plaintiff because of Plaintiff's disability and/or because Plaintiff required reasonable accommodation for disability-related limitations.

58. Defendant's stated justification for termination is plausibly contestable and/or pretextual, including because Defendant had discretion to allow leave beyond FMLA and has done so for other employees, and Plaintiff's position was not filled after termination and the role remained "evergreen".

59. Because of the foregoing, Defendant discriminated against Plaintiff in violation of the ADA, and Plaintiff has suffered damages and other losses.

60. Plaintiff is entitled to all available relief under the ADA, including back pay, front pay, compensatory damages, attorney's fees, and costs, and such other relief as the Court deems just and proper.

## COUNT II
## ADA Failure to Accommodate (42 U.S.C. § 12112(b)(5)(A))

61. Plaintiff incorporates by reference Paragraphs 1 through 59 as if fully set forth herein.

62. Plaintiff had a disability within the meaning of the ADA during the relevant period.

63. Defendant had notice of Plaintiff's disability-related limitations and need for accommodation, including through Plaintiff's accommodation request(s) and medical documentation reflecting restrictions and a finite return-to-work timeframe through April 20, 2024.

64. Plaintiff was a qualified individual because he could perform the essential functions of his position with reasonable accommodation, and the accommodation(s) Plaintiff sought were reasonable.

65. Plaintiff requested reasonable accommodations, including a finite extension of leave through April 20, 2024.

66. These accommodations were reasonable, time-limited, and would have enabled Plaintiff to return to work and perform the essential functions of the Maintenance Technician position by April 20, 2024.

67. Defendant failed or refused to provide the requested reasonable accommodation(s) and/or failed to engage in a good-faith interactive process to identify effective accommodation, including by:

    a) Denying a finite, medically supported leave extension rather than seeking clarification or updated documentation;

    b) Failing to consider alternatives consistent with Defendant's practices, such as an official leave of absence or other adjustments; and/or

    c) Proceeding to termination rather than implementing effective accommodation.

68. Defendant's failure and refusal to reasonably accommodate Plaintiff violated the ADA.

69. As a direct and proximate result, Plaintiff suffered damages and other losses.

70. Plaintiff is entitled to all available relief under the ADA, including injunctive relief, back pay, front pay, compensatory damages, attorney's fees, and costs.

## COUNT III
## ADA Retaliation (42 U.S.C. § 12203)

71. Plaintiff incorporates by reference Paragraphs 1 through 68 as if fully set forth herein.

72. Plaintiff engaged in protected activity under the ADA, including by requesting reasonable accommodation and by seeking an extension of leave as reasonable accommodation.

73. Defendant knew of Plaintiff's protected activity.

74. Defendant took materially adverse actions against Plaintiff, including denying Plaintiff's accommodation request(s) and terminating Plaintiff effective March 18, 2024.

75. Defendant's adverse actions were causally connected to Plaintiff's protected activity, as shown by temporal proximity and Defendant's stated rationale focusing on Plaintiff's accommodation/leave needs.

76. Defendant's conduct constitutes unlawful retaliation in violation of the ADA.

77. Plaintiff is entitled to all available relief under the ADA, including compensatory damages, attorney's fees, and costs.

## COUNT IV
### Maryland Title 20 Disparate Treatment – Discriminatory Discharge
### (Md. Code Ann., State Gov't § 20-606(a)(1))

78. Plaintiff incorporates by reference Paragraphs 1 through 75 as if fully set forth herein.

79. Plaintiff had a disability within the meaning of Maryland law during the relevant period.

80. Plaintiff was otherwise qualified to perform the essential functions of the Maintenance Technician position with reasonable accommodation, and Plaintiff's disability did not "reasonably preclude" the performance of his employment.

81. Defendant discharged Plaintiff effective March 18, 2024.

82. Defendant discharged Plaintiff because of Plaintiff's disability and/or because Plaintiff required reasonable accommodation.

83. Defendant's conduct violates Md. Code Ann., State Gov't § 20-606(a)(1).

84. Plaintiff is entitled to all available relief, including back pay, front pay, compensatory damages, attorney's fees, and costs.

## COUNT V
### Maryland Title 20 Failure to Accommodate
### (Md. Code Ann., State Gov't § 20-606(a)(4))

85. Plaintiff incorporates by reference Paragraphs 1 through 82 as if fully set forth herein.

86. Plaintiff had a known disability during the relevant period, and Defendant had notice of Plaintiff's limitations and request for accommodation.

87. Plaintiff was otherwise qualified to perform the essential functions of his position with reasonable accommodation.

88. Plaintiff requested reasonable accommodation(s), including a finite leave through April 20, 2024.

89. Defendant failed or refused to make reasonable accommodation for Plaintiff's known disability, in violation of Md. Code Ann., State Gov't § 20-606(a)(4).

90. As a result, Plaintiff suffered damages and other losses and is entitled to all available relief.

## COUNT VI
### Maryland Title 20 Retaliation (Md. Code Ann., State Gov't § 20-606(f))

91. Plaintiff incorporates by reference Paragraphs 1 through 88 as if fully set forth herein.

92. Plaintiff engaged in protected activity, including requesting reasonable accommodation and opposing disability discrimination.

93. Defendant knew of Plaintiff's protected activity.

94. Defendant retaliated against Plaintiff by denying accommodation and terminating Plaintiff effective March 18, 2024.

95. Defendant's retaliation violates Md. Code Ann., State Gov't § 20-606(f).

96. Plaintiff is entitled to all available relief, including compensatory damages, attorney's fees, and costs.

### VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant and award:

a) Backpay, lost benefits, and other make-whole relief;

b) Front pay in lieu of reinstatement or reinstatement where appropriate;

c) Compensatory damages (including emotional distress) as permitted by law;

d) Pre-judgment and post-judgment interest as permitted by law;

e) Attorneys' fees and costs under applicable law;

f) Injunctive relief requiring reinstatement of Plaintiff's employment.

g) Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

January 25, 2026,                                Respectfully Submitted,

*/s/ George Rose*
Federal Bar No.: 26086
Rose Law Firm, LLC
9134 Liberty Road
Baltimore, MD  21133
Ph: 410-727-7555 / Mobile: 443-610-4258
Fax: 443-320-0962
Email: grose@roselawfirm.us
Attorney for *Plaintiff Walter Whitaker*